**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE DAVID KLEIMAN, | : | Bankruptcy No. 05-37809 (RTL) |
|  | : | Adv. Proc. No. 05-6158 (RTL) |
| Debtor. | : |  |
| ——————————————— | : |  |
|  | : |  |
| DAVID KLEIMAN, | : |  |
|  | : | CIVIL ACTION NO. 07-3461 (MLC) |
| Appellant, | : |  |
|  | : |  |
| v. | : | **MEMORANDUM OPINION** |
|  | : |  |
| KEVIN GOODMAN, | : |  |
|  | : |  |
| Appellee. | : |  |
| ——————————————— | : |  |

David Kleiman ("Debtor") filed a voluntary bankruptcy
petition under chapter 7 of the United States Bankruptcy Code, 11
U.S.C. § ("Section") 101, et seq. ("Bankruptcy Code"), on August
30, 2005.  See Bankr. No. 05-37809, dkt. entry no. 1, Pet.  Kevin
Goodman ("Goodman") brought an adversary proceeding against the
Debtor in the United States Bankruptcy Court for the District of
New Jersey ("Bankruptcy Court") seeking a judgment, inter alia,
declaring that $32,771.32, which the Debtor owes to Goodman
pursuant to a loan, is nondischargeable under Sections
523(a)(2)(A) and 727(b).  See Bankr. Adv. Proc. No. 05-6158, dkt.
entry no. 1, Compl.  The Bankruptcy Court held a one day trial on
March 2, 2007.  Id., dkt. entry no. 59, 3-2-07 Trial Tr.
Thereafter, the Bankruptcy Court entered an Order for Judgment on
May 18, 2007 ("5-18-07 Order") finding that the debt the Debtor

owes to Goodman is nondischargeable under Section 523(a)(2)(b).
Id., dkt. entry no. 44, 5-18-07 Ord.  The Debtor now appeals from
the 5-18-07 Order.  For the reasons stated herein, the Court will
affirm the 5-18-07 Order.

**BACKGROUND**

**I.    Overview of the Loan from Goodman to the Debtor**

A large Wall Street securities broker hired the Debtor as
Managing Director of Pan-European Sales in April 2003.  Id., dkt.
entry no. 43, 5-18-07 Mem. Op. ("5-18-07 Mem. Op."), at 2.  (See
Appellant Br., at 7.)  Before obtaining this position, the Debtor
worked at other brokerage firms for approximately eight years.
5-18-07 Mem. Op., at 2.  During that time, the Debtor had
"volatile" but high earnings, including "a peak w-2 reported
income (not cash earnings) in the amount of $750,000."
(Appellant Br., at 7.)  Nevertheless, the Debtor had no savings
or assets.  (Id.)  "Other than paying off student loans the other
explanation for this anomaly was the debtors [sic] excessive
spending habits, including excessive spending at nightclubs,
which amounted to as much as and more than his cash earnings."
(Id.)

The Debtor began having difficulty paying his credit card
bills, and thus, he asked a friend for a $30,000 loan.  (Id.)  5-
18-07 Mem. Op., at 2.  The friend refused to loan the Debtor this
sum, but contacted Goodman on the Debtor's behalf.  5-18-07 Mem.
Op., at 2.  Goodman asserts that during a telephone conversation

2

held on August 27, 2003, the friend represented to him that the
Debtor (1) was working for a brokerage firm with a base salary of
$150,000 per year, (2) was entitled to a bonus of no less than
$100,000 sometime before January 31, 2004, and (3) needed only
$30,000 to satisfy all of his delinquencies.  <u>Id.</u> at 2-3.[1]  The
Debtor and Goodman had known each other for more than twenty
years when Goodman was approached about the loan.  <u>Id.</u> at 3.
(<u>See</u> Appellant Br., at 7 (stating that Goodman was "an
acquaintance of the debtor. . . whom he had not seen nor heard
from for nearly 20 years", but the Debtor had heard about
Goodman's job and personal life over the this time period);
Appellee Br., at 7 (noting that Goodman had known the Debtor for
approximately twenty years when he approached him about the
loan).)  Thus, Goodman "said he might be able to make a loan to
help a friend but wanted to be sure he would be repaid."  5-18-07
Mem. Op., at 3.

   The Debtor sent Goodman several e-mails describing his
current financial situation.  (Appellee Br., at 6.)  The Debtor
noted in one e-mail that this would be an unsecured loan, and

---

[1] The Bankruptcy Court found that the Debtor was also on the
phone during this conversation.  <u>Id.</u> at 2.  However, the Debtor
disputes this finding of fact, as well as any "claims made by the
Plaintiffs/Debtors [sic] mutual friend on the purported call,
most notably, that the mutual friend made any representations
that the Debtor was presently entitled to a bonus of no less than
$100,000, payable before January 31st, 2004 without contingency."
(Appellant Br., at 8.)

3

thus, the interest rate would be high.  (Appellant Br., Ex. B, 8-
27-03 3:31 p.m. E-mail from the Debtor to Goodman.)  Further, the
Debtor explained, <u>inter alia</u>, that (1) he was interested in
borrowing $35,000 with "payback" at the end of December when he
received his bonus, (2) his living expenses were minimal, (3) he
made $150,000 in base compensation, and (4) his "nightmare
scenario would be $100,000 in bonus".  (<u>Id.</u>; <u>id.</u>, Ex. C, 8-28-03
9:24 a.m. E-mail from the Debtor to Goodman (capitalization
omitted).)  According to Goodman, he asked the Debtor if he had
any other debts and the Debtor assured him that he did not.
(Appellee Br., at 7.)  Moreover, the Debtor explained that his
annual bonus for the past five years averaged over $100,000, but
he would not be able to obtain a bank loan because he had a poor
credit history and no assets to pledge as collateral.  5-18-07
Mem. Op., at 4.  (Appellant Br., at 10.)

Goodman asserts that he "was still hesitant about making the
loan and wanted assurances from [the Debtor] that the bonus was
'vested'."  (Appellee Br., at 8.)  In an e-mail dated August 28,
2003, the Debtor explained:

> [t]he Bonus is "vested" in the sense that there is no
> restriction on it.  The amount will be determined in
> mid December and is cash.  Only amounts in excess of
> $250,000 merit a portion (up to 1/3) of the bonus to be
> paid in non-cash . . . stock which in turn "vests" 1/3
> per annum.
>
> For instance, in my worst case $100,000 scenario a cash
> payment would be made to me a few weeks after the exact
> amount was determined.

4

(Appellant Br., Ex. D, 8-28-03 10:58 a.m. E-mail from the Debtor
to Goodman.)[2]  Goodman testified that the Debtor told him that he
was entitled to his bonus even if he was fired.  5-18-07 Mem.
Op., at 4-5.  (See Appellant Br., at 12 (noting that Goodman
testified that he understood the Debtor's use of the word
"vested" as meaning that he had a right to his bonus without
contingency).)  The Debtor, however, denied stating that he was
entitled to his bonus even if he was not employed at the
brokerage firm and noted that his bonus was discretionary.  5-18-
07 Mem. Op., at 5.  (Appellant Br., at 11.)  He argues that when
he referred to his bonus as vested he meant that "once the bonus
was announced, and an amount determined, a certain portion of
that bonus would be 'vested', in cash, with no restriction on it
so that the Debtor would have the ability to repay the loan."
(Appellant Br., at 11.)

     Goodman eventually agreed to give the Debtor the loan.
Accordingly, on September 4, 2003, the Debtor signed a promissory
note in the amount of $35,000 plus interest at the rate of 10%
per year ("Loan").  (Id. at 13.)  5-18-07 Mem. Op., at 5.  The

---

     [2] The Debtor testified that when he used phrases such as
"worst case $100,000 scenario" and "nightmare scenario . . .
$100,000 in bonus", he was simply using colorful and imprecise
language that does not communicate any specific amount and
"further supports his contention that both parties were aware
that no guarantee contract existed" between the Debtor and his
employer.  (Id. at 11.)

following day, the "funds were wired from Goodman Capital to the
Debtors [sic] personal account."  (Appellant Br., at 13.)
However, the Debtor's employment at the brokerage firm was
terminated shortly thereafter and he did not receive his annual
bonus.  (Id.)  5-18-07 Mem. Op., at 5.  As a result, the Debtor
defaulted on his Loan payments.  5-18-07 Mem. Op., at 5.  Between
September 4, 2003 and August 30, 2005, the date the Debtor filed
his bankruptcy petition, the Debtor paid only $3,200 of interest
to Goodman in connection with the Loan.  Id.  (Appellant Br., at
13.)  The remaining unpaid balance due on the Loan is $38,771.32.
(Appellant Br., at 13.)  5-18-07 Mem. Op., at 5.

## II.  The Bankruptcy Court's May 18, 2007 Opinion

The Bankruptcy Court, after conducting a trial on March 2,
2007, concluded that the Debtor's debt to Goodman was
nondischargeable under Section 523(a)(2)(B).  5-18-07 Mem. Op.,
at 13.  (See Appellee Br., at 6-7.)  The Bankruptcy Court noted
that Section 523(a)(2)(B) applied to the Debtor's e-mails to
Goodman because they contained statements pertaining to the
Debtor's financial condition.  5-18-07 Mem. Op., at 8.  The court
also noted the term "vested" is defined as "fully and
unconditionally guaranteed as a legal right, benefit or
privilege."  Id. at 9.  Thus, the Bankruptcy Court determined
that when the Debtor stated in an e-mail that his bonus was
vested, the ordinary listener would have believed he had a fixed

6

and absolute right to such bonus.  Id.  Therefore, the court
concluded that Goodman "ha[d] proven that the Debtor's statement
that his bonus was vested was materially false."  Id. at 10.

        The Bankruptcy Court acknowledged that the amount of the
bonus was not fixed, but stated that uncertainty as to the amount
does not suggest that Goodman was unjustified in relying on the
Debtor's statement that the bonus was vested.  Id.  Similarly,
the court stated that the Debtor's use of phrases like "worst
case" and "nightmare scenario" in reference to the amount of the
bonus being at least $100,000 truthfully indicated that the
Debtor was unsure about his bonus amount, but this "does not
change the fact that [he] represented that his bonus was vested,
which was false."  Id.  The Bankruptcy Court concluded that the
Debtor's refusal to let Goodman contact his employer "leads to
the conclusion that he knew his representation that the bonus was
vested was false and that he made it with intent to deceive
[Goodman]."  Id. at 10-11.  The Bankruptcy Court then determined
that Goodman's reliance on the Debtor's false statement was
reasonable because, inter alia, (1) he was not in the business of
lending money, (2) he made all conceivable inquiries about the
Debtor's income, collateral, assets, and liabilities, (3) "[h]is
attempt to verify the bonus was rebuffed by the Debtor", (4) this
was a loan between friends, and (5) "[t]here was no 'red flag'
that would alert an ordinary person to the falsity of the
Debtor's description of his bonus as vested."  Id. at 12-13.

7

Therefore, the court held that the outstanding balance of the
Loan is nondischargeable because the Debtor falsely represented
that he was entitled to a vested bonus with the intent to deceive
Goodman and induce him to make the Loan.  Id. at 13.

**DISCUSSION**

**I.   Jurisdiction and Standard of Review**

A district court has appellate jurisdiction over a
bankruptcy court's final judgments, orders, and decrees.  28
U.S.C. § 158(a).  A district court reviews a bankruptcy court's
"legal determination de novo, its factual findings for clear
error[,] and its exercise of discretion for an abuse thereof."
In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000); see Fed.R.Bankr.P.
8013 ("On appeal the district court . . . may affirm, modify, or
reverse a bankruptcy judge's judgment, order, or decree or remand
with instructions for further proceedings.  Findings of fact,
whether based on oral or documentary evidence, shall not be set
aside unless clearly erroneous.")  Also, the Court, when
addressing mixed questions of law and fact, divides the questions
into their respective components and applies the appropriate
standard to each.  In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

## II.  Legal Standards[3]

The purpose of the Bankruptcy Code is "to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start."  Ins. Co. of N. Am. v. Cohn (In re Cohn), 54 F.3d 1108, 1113 (3d Cir. 1995).  Section 727 provides that (1) the bankruptcy court must grant the debtor a discharge, and (2) such a discharge "discharges the debtor from[, inter alia,] all debts that arose before the date of the order for relief".  See 11 U.S.C. § 727(a)-(b).  However, the Bankruptcy Code provides exceptions to discharge in certain circumstances involving debtor malfeasance.  JP Morgan Chase Bank v. Tamis, No. 05-737, 2005 U.S. Dist. LEXIS 28120, at *11-*12 (D.N.J. Nov. 16, 2005).  The Bankruptcy Code provisions providing exceptions to discharge are strictly construed against creditors and in favor of the debtor.  Id. at *12; In re Cohn, 54 F.3d at 1113.  A party objecting to discharge under Section 523(a), for example, bears the burden of proving that the particular debt at issue is nondischargeable by a preponderance of the evidence.  In re Cohn, 54 F.3d at 1114; see Grogan v. Garner, 498 U.S. 279, 286-87 (1991) (determining that preponderance of the evidence is the appropriate burden of

---

[3] The Debtor's bankruptcy case was commenced prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  See 109 P.L. 8, 119 Stat. 23 (2005). Section 523(a)(2)(B), which is discussed at length in this Legal Standards section, was not amended in that Act.

9

proof governing the applicability of the Bankruptcy Code's
nondischargeability provisions).

The Bankruptcy Court relied on Section 523(a)(2)(B) in
reaching its determination that the amount the Debtor owes to
Goodman is nondischargeable.  Section 523(a)(2)(B) provides, that
a debtor's discharge under Section 727 does not discharge any
debt:

> for money, property, services, or an extension,
> renewal, or refinancing of credit, to the extent
> obtained, by --
>     (B) use of a statement in writing --
>         (I) that is materially false;
>         (ii) respecting the debtor's or an insider's
>         financial condition;
>         (iii) on which the creditor to whom the
>         debtor is liable for such money,
>         property, services or credit reasonably
>         relied; and
>         (iv) that the debtor caused to be made or
>         published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).  Thus, to have his debt declared
nondischargeable, Goodman needed to show that the Debtor made one
or more statements in writing (1) that were materially false, (2)
respecting his financial condition, (3) with intent to deceive,
and (4) upon which Goodman reasonably relied.  In re Cohn, 54
F.3d at 1114; Tamis, 2005 U.S. Dist. LEXIS 28120, at *13.
Whether a statement is material is a question of law for the
Court.  In re Cohn, 54 F.3d at 1115.  The materiality prong
includes a "reliance component", and thus, "an untruth can be
considered important (or material) if it influences a creditor's
decision to extend credit."  Id. at 1114. Further, a statement is

10

material if a reasonable person would have relied upon it even if
the creditor did not actually rely upon it.  Id.

The reasonable reliance prong of the Section 523(a)(2)(B)
analysis, however, requires that the creditor actually relied
upon the statement at issue.  Id. at 1115.  Thus, the Court
employs a partly subjective standard in determining whether the
creditor's reliance on the debtor's statements was reasonable.
Id. at 1117; Tamis, 2005 U.S. Dist. LEXIS 28120, at *16
(explaining that Section 523(a)(2)(B)(iii) requires that the
creditor actually relied on the false statement and that such
reliance was reasonable).  The Court must consider:

> (1) the creditor's standard practices in evaluating
> credit worthiness (absent other factors, there is
> reasonable reliance where the creditor follows its
> normal business practices); (2) the standards or
> customs of the creditor's industry in evaluating
> credit-worthiness (what is considered a commercially
> reasonable investigation of the information supplied by
> the debtor); and (3) the surrounding circumstances
> existing at the time of the debtor's application for
> credit (whether there existed a "red flag" that would
> have alerted an ordinarily prudent lender to the
> possibility that the information is inaccurate, whether
> there existed previous business dealings that gave rise
> to a relationship of trust, or whether even minimal
> investigation would have revealed the inaccuracy of the
> debtor's representations).

In re Cohn, 54 F.3d at 1117.  Whether the creditor reasonably
relied on the debtor's statement is a factual question for the
trier of fact.  Id. at 1118.

The Court may infer that a debtor made a false statement
with the intent to deceive from the totality of the

11

circumstances.  Id. at 1118-19.  The totality of the
circumstances suggests that a debtor intended to deceive the
creditor when such debtor made the statement at issue with
reckless disregard for its falsity.  Id. at 1119.  Thus, "a
creditor can establish intent to deceive by proving reckless
indifference to, or reckless disregard of, the accuracy of the
information in the . . . statement of the debtor when the
totality of the circumstances supports such an inference."  Id.

## III. **Legal Standards Applied Here**

The Debtor emphasizes that the Bankruptcy Court found that
his bonus was non-fixed and discretionary.  (Appellant Br., at
4.)  Thus, throughout his brief, he argues that his bonus was
vested, but its amount was zero dollars due to his termination.
(See, e.g., id.)  He also argues, inter alia, that (1) "[t]he
Bonus cant [sic] be determined to be an Asset if it has no
value", (2) the Bankruptcy Court erred in assuming that Goodman,
an attorney and chief financial officer of a leading debt
collection agency, believed that the Debtor and his employer
entered into an agreement stating that the Debtor's bonus was
non-contingent, and (3) "the meaning of the word vested [wa]s
taken out of context and ascribed a different meaning altogether,
after the fact, from the actual meaning implied and evidenced by
the Debtors [sic] emails to [Goodman]."  (Id. at 6, 9, 12.)
Further, he asserts that:

12

> the term "vested" and the "amount of bonus to granted
> [sic] on a discretionary basis" are terms inextricably
> linked. Assumptions of present entitlements of bonuses
> which maybe zero make no sense. However assumptions of
> entitlements to a bonus once AND ONLY IF an amount has
> been determined do make sense. The expected
> discretionary bonus payment is in January, until that
> moment, one cannot logically argue the present
> entitlement of nothing.

(Id. at 15.) Accordingly, the Debtor contends that he did not make any false statements, but instead simply used the term "vested" in his e-mail to Goodman to suggest that once his bonus amount was determined, there would be no restrictions on it. (Id. at 16.)

The Debtor argues that the Court, in addressing this appeal, should consider that Goodman (1) willingly originated the Loan, (2) had a history of making personal and business loans, and (3) failed to conduct "substantive due diligence" before making the Loan, including asking the Debtor for a copy of any agreements between him and his employer. (Id. at 14; see id. at 18 (stating that Goodman did not make all conceivable inquiries about the Debtor's collateral, income, expenses, assets, and liabilities).) He also emphasizes that it would be "unreasonable to assume that an employee would be dismissed by his firm and then rewarded with a discretionary, non-fixed bonus in an amount other than zero." (Id. at 17.) He contends, inter alia, that the Loan "must be viewed by the [C]ourt as something other than 'ordinary' and more akin to something 'out of the ordinary' and replete with 'red flags'." (Id. at 18.)

13

Goodman, in contrast, argues that it is "a basic, undisputed fact" that (1) the Debtor represented to Goodman that he had a vested bonus and in a "nightmare scenario" the amount of the bonus would be $100,000, and (2) the Debtor's bonus was not guaranteed, but instead was discretionary. (Appellee Br., at 10.) Goodman notes that he testified that he relied on the Debtor's e-mail representations regarding the vested nature of the bonus, and would not have made the loan absent these representations. (Id.) Further, he contends that the Bankruptcy Court correctly considered the applicable evidence and determined that Goodman's reliance on the Debtor's statements was reasonable. (Id.)

Goodman states, "it is unclear what specific legal arguments [the Debtor] is making in his brief", but then presents counter-arguments to "the themes that are repeated at length" in the Debtor's brief. (Id. at 11-13.) For example, Goodman asserts that "it was evidence that even though the 'vested bonus' had a 'probable value of zero,' which was known to [the Debtor], he did not provide this information to Goodman in connection with the making of the loan." (Id. at 12 (stating that the trial court found that the Debtor misrepresented his bonus as vested and fixed when it was actually discretionary).) Also, Goodman explains that the Bankruptcy Court did not find that the bonus was an asset, but instead determined that it was the designated

14

source of income for repaying the Loan.  (Id.)  Thus, Goodman
contends that the Bankruptcy Court's findings of fact were amply
supported by the record.  (Id. at 9-13.)  Goodman also contends
that even under a de novo standard of review, the record supports
the Bankruptcy Court's holding because, inter alia, (1) applying
the plain and ordinary meaning of the term "vested", the Debtor's
bonus was not vested when he represented to Goodman that it was,
(2) the record indicates that the Debtor's statements that his
bonus was vested and he expected no less than $100,000 were
materially false and made with intent to deceive Goodman, and (3)
Goodman's reliance on the Debtor's statements was reasonable
considering the circumstances and the relationship between the
parties.  (Id. at 13-17.)

    The Court finds that the Bankruptcy Court did not err in
concluding that the outstanding balance of the Loan to the Debtor
is nondischargeable under Section 523(a)(2)(B).  The Debtor's e-
mails to Goodman constitute written statements about his
financial condition, and thus, Section 523(a)(2)(B) applies.  See
In re Cohn, 54 F.3d at 1114; Tamis, 2005 U.S. Dist. LEXIS 28120,
at *13.  Specifically, the Debtor's e-mails explain that he (1)
was in immediate need of a loan in the amount of $35,000, even if
such loan had a high interest rate, (2) was entitled to a vested
year-end bonus, which would be $100,000 in the "worst-case
scenario", (3) has minimal living expenses and a base salary of

15

$150,000, (4) received annual bonuses averaging more than
$100,000 for the past five years, and (5) had no assets and a
poor credit history.  (See Appellant Br., Ex. B, 8-27-03 3:31
p.m. E-mail from the Debtor to Goodman; id. Ex. C, 8-28-03 9:24
a.m. E-mail from the Debtor to Goodman; id., Ex. D, 8-28-03 10:58
a.m. E-mail from the Debtor to Goodman.)  5-18-07 Mem. Op., at
4.[4]  Therefore, because the written statements at issue pertain
to the Debtor's financial condition, the Bankruptcy Court
properly determined that the outstanding balance of the Loan was
nondischargeable if Goodman established that (1) such statements
were materially false, (2) he relied on such statements, and (3)
the Debtor made the statements with the intent to deceive.  See
In re Cohn, 54 F.3d at 1114; Tamis, 2005 U.S. Dist. LEXIS 28120,
at *13.

**A.  Materially False**

The Bankruptcy Court based its conclusion that the Debtor
made a materially false statement to Goodman on the applicable
law and the entire record before it.  See Tamis, 2005 U.S. Dist.

---

[4] The Bankruptcy Court did not address the Debtor's alleged
oral statements that he had (1) a right to his bonus even if he
was fired before year end, (2) not borrowed money from relatives,
and (3) no tax obligations. 5-18-07 Mem. Op., at 8-9.  Instead,
the Bankruptcy Court addressed only the written statements at
issue under Section 523(a)(2)(B).  Because we find that the
Bankruptcy Court did not err in concluding that the Debtor's debt
to Goodman is nondischargeable under Section 523(a)(2)(B), it is
unnecessary for us to address the Debtor's oral statements,
particularly in light of the fact that the Debtor denies making
any such statements.

LEXIS 28120, at *17.  The Debtor's statement that his bonus was
"'vested' in the sense that there is no restriction on it" was
material because it influenced Goodman's decision to extend him
the Loan.  See In re Cohn, 54 F.3d at 1115 ("It is sufficient
that the false statement is one that is capable of influencing,
or had a natural tendency to influence, a creditor's decision.").

 (See Appellant Br., Ex. D, 8-28-03 10:58 a.m. E-mail from the
Debtor to Goodman.)  The Debtor chose to use the word "vested" in
his e-mail to Goodman, a word that is defined as "fully and
unconditionally guaranteed as a legal right, benefit, or
privilege".  Webster's Ninth New Collegiate Dictionary 1312 (9th
ed. 1991).  He also stated without qualification, in the same e-
mail, that the amount of the bonus "will be determined in mid
December and is cash.  [I]n my worst case $100,000 scenario a
cash payment would be made to me a few weeks after the exact
amount was determined."  (Appellant Br., Ex. D, 8-28-03 10:58
a.m. E-mail from the Debtor to Goodman.)  Thus, the Debtor
provided Goodman with further information supporting his
statement that the bonus was vested or guaranteed.  Accordingly,
the Court finds that this statement is material because a
reasonable person would have relied upon it in deciding whether
to loan the Debtor the amount requested.  See In re Cohn, 54 F.3d
at 1114.

The Court also finds that the Bankruptcy Court correctly
determined that the Debtor's statement that he had a vested bonus
was false.  See 5-18-07 Mem. Op., at 9-10 (finding that Goodman
had established that the Debtor's statement that his bonus was
vested was materially false).  The Debtor did not have a fully
and unconditionally guaranteed right to receive a bonus, as
demonstrated by the fact that the Debtor did not receive any
bonus.  The Debtor argues throughout his brief that he did have a
vested bonus but his employer determined, in its discretion, that
the amount of such bonus should be $0. (See generally Appellant
Br.)  However, this argument is not persuasive because the Debtor
did not convey this possibility to Goodman, but instead stated
that his bonus was vested, and thus, falsely suggested that he
was unconditionally entitled to receive some amount.

The Debtor's statements that his "nightmare scenario would
be $100,000 in bonus" or worst-case scenario would be a $100,000
cash payment suggest only the fact that the amount of the bonus
was not fixed. (See Appellant Br., Ex. C, 8-28-03 9:24 a.m. E-
mail from the Debtor to Goodman (capitalization omitted); id. Ex.
D, 8-28-03 10:58 a.m. E-mail from the Debtor to Goodman.)  Thus,
we agree with the Bankruptcy Court that these statements were
true when made.  Nevertheless, the truth of these statements and
the fact that the amount of the Debtor's bonus was uncertain does
not alter our conclusion that the Debtor falsely represented that

his bonus was vested and he was guaranteed to receive some amount, which would likely be more than $100,000.

## B.    Reasonable Reliance

The Court finds, based on the evidence in the record, that it was not clearly erroneous for the Bankruptcy Court to conclude that Goodman reasonably relied on the Debtor's statement that his bonus was vested. See In re Cohn, 54 F.3d at 1118 (explaining that whether the creditor reasonably relied on the debtor's statement is a question of fact). See 5-18-07 Mem. Op., at 12-13. First, although the Debtor testified that Goodman made numerous loans to various people, he did not offer any evidence to substantiate this statement. See Bankr. Adv. Proc. No. 05-6158, dkt. entry no. 59, 3-2-07 Trial Tr., at 50. Thus, there was no evidence presented suggesting that Goodman had any standard practices he followed in evaluating credit worthiness, and he was likely unaware of any particular industry practices for making such an evaluation. See In re Cohn, 54 F.3d at 1117.

Goodman testified that he (1) is not a lender, but instead, is general counsel and vice president of a company called Outsourcing Solutions, Inc, and (2) was simply attempting to help a friend in need of a short term loan. See Bankr. Adv. Proc. No. 05-6158, dkt. entry no. 59, 3-2-07 Trial Tr., at 5, 12. He also testified at length that before deciding to give the Debtor the Loan, he questioned the Debtor during telephone conversations and

19

in e-mail exchanges about (1) why he needed a loan, (2) how he
had accrued more than $30,000 in credit card debt, (3) whether he
had any other options for obtaining a loan, (4) how specifically
the Loan would be repaid, (5) the nature of his bonus, (6) his
general living expenses and assets, (7) whether he had any other
outstanding debts, and (8) whether he could contact the Debtor's
employer to discuss the bonus.  Id. at 10-28.  According to
Goodman, the Debtor told him, inter alia, that (1) his mother had
been ill and he had incurred some credit card debt assisting her
with medical expenses, (2) he did not want Goodman to contact his
employer because he did not want his employer to know he had
accumulated a large amount of debt on his company credit card,
(3) he had no other outstanding loans, (4) his year-end bonus was
non-contingent and he would receive it even if his employment
were terminated, (5) he had no tax liabilities, and (6) his bonus
was not restricted.  Id. at 11-12, 16-17, 19, 24-25.
Accordingly, the Court finds that the Bankruptcy Court did not
err in determining that Goodman "made all conceivable inquiries
about collateral, income, expenses, assets and liabilities."  5-
18-07 Mem. Op., at 12.

The Court also finds, after reviewing both Goodman's and the
Debtor's testimony, that there were no "red flags" that would
have alerted Goodman or any other lender that the Debtor's
description of his bonus as vested was false or inaccurate.  See

20

In re Cohn, 54 F.3d at 1117.  In fact, the parties' relationship,
as either friends or acquaintances for more than 20 years, gave
rise to "a relationship of trust".  Id.  Therefore, this Court
concludes that Goodman actually relied on the statement at issue,
and we agree with the Bankruptcy Court that such reliance was
reasonable.  See id. at 1115; Tamis, 2005 U.S. Dist. LEXIS 28120,
at *16 (explaining that Section 523(a)(2)(B)(iii) requires that
the creditor actually relied on the false statement and that such
reliance was reasonable).

### C.   Intent to Deceive

The Court, as noted above, may infer from the totality of
the circumstances that the Debtor made the false statement with
the intent to deceive Goodman.  Id. at 1118-19.  Such an
inference is appropriate here where the Debtor was fully aware
that he would not receive any bonus if his employment were
terminated before the year's end, but he failed to convey this
information to Goodman, despite Goodman's repeated inquires about
the nature of the bonus.  Goodman testified that he explained to
the Debtor, "I need to know that [the bonus is] yours, that
there's no chance of it not being yours and that it will be mine
in January."  See Bankr. Adv. Proc. 05-6158, dkt. entry no. 59,
3-2-07 Trial Tr., at 22-23.  He further testified that he then
received an e-mail from the Debtor indicating that the bonus was
vested and he would receive $100,000 in the worst-case scenario.

Id. at 24.   Thus, the circumstances suggest that the Debtor knew that Goodman would not make the Loan unless he assured him that his bonus was part of his compensation package and he would definitely receive some amount to be determined after December. See id.   Accordingly, we agree with the Bankruptcy Court that the Debtor represented to Goodman that the bonus was vested to induce him to make the Loan and with reckless disregard for the statement's falsity.   5-18-07 Mem. Op., at 13.   See In re Cohn, 54 F.3d at 1119 (noting that the totality of the circumstances suggests that the debtor intended to deceive the creditor when the debtor made the statement at issue with reckless disregard for its falsity).

Case 05-06157-BFK Doc 61 Doc 61 Filed 01/30/08 Entered 01/30/08 12:32:37 Desc Main
Document    Page 23 of 23

**CONCLUSION**

The Court, for the reasons stated supra, concludes that the Debtor has failed to demonstrate that the Bankruptcy Court erred in finding that the outstanding balance of Goodman's Loan is nondischargeable under Section 523(a)(2)(B).[5]  The Court will issue an appropriate order.

                                    s/ Mary L. Cooper
                                    **MARY L. COOPER**
                                    United States District Judge

Dated: January 30, 2008

_____

[5] The Court notes that in the adversary complaint, Goodman requested that the Bankruptcy Court declare the outstanding balance of the Loan nondischargeable under Section 523(a)(2)(A). Section 523(a)(2)(A) provides that a debtor's discharge under Section 727 does not discharge any debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).  However, the Bankruptcy Court determined that applying Section 523(a)(2)(B) was more appropriate here, and the parties addressed only Section 523(a)(2)(B) in their briefs on appeal.  Thus, we will not address whether the outstanding balance of the loan is also nondischargeable under Section 523(a)(2)(A).